**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN T. SANDERS, ) | CASE NO. 1:21-cv-1254 |
| ) | |
| Plaintiff, ) | JUDGE CHARLES E. FLEMING |
| ) | |
| ) | **ORDER RE: DEFENDANTS'** |
| v. ) | **MOTION FOR JUDGMENT** |
| ) | **ON THE PLEADINGS** |
| CUYAHOGA COUNTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## I.   Procedural History

On November 23, 2021, Plaintiff filed an amended complaint alleging that Defendant Lourie fired a beanbag round at a protest at the Justice Center in Cleveland, Ohio on May 30, 2020 that struck Plaintiff on his side and back. (ECF No. 20). The metal pellets that exploded from the round destroyed Plaintiff's left eye. *Id*. Plaintiff filed twelve claims against Defendants Cuyahoga County, Armond Budish, David Schilling, Bruce Lourie, and Juan Rodriguez. *Id*. On December 16, 2021, Defendants answered Plaintiff's amended complaint. (ECF No. 22).

On January 25, 2022, Defendants Cuyahoga County, Armond Budish, and David Schilling moved for judgment on the pleadings per Fed. R. Civ. P. 12(c) with respect to all claims alleged against them, claims eight through twelve. (ECF No. 27). Defendants argued 1) Plaintiff's complaint lacks sufficient non-conclusory factual material; 2) Budish and Schilling are entitled to qualified immunity with respect to claims eight and nine; and 3) Cuyahoga County cannot be liable for claim twelve pursuant to Ohio's Political Subdivision Tort Liability Act, chapter 2744 of the Ohio Revised Code. *Id*.

On April 25, 2022, Plaintiff opposed the motion, arguing that his amended complaint

1

alleged ample factual material to survive a motion for judgment on the pleadings and noting that Defendants' motion failed to identify any legal deficiency in the amended pleadings. (ECF No. 35). Plaintiff argued that it is not appropriate for the Court to dismiss based on qualified immunity at this point because rendering that decision solely on the allegations in a complaint is unfair without necessary factual development from discovery. *Id*. Plaintiff did not address Defendants' concern regarding the Political Subdivision Tort Liability Act.

On May 24, 2022, Defendants replied in support of their motion. (ECF No. 37). Defendants argued that dismissal under qualified immunity is appropriate at this early stage in proceedings because Plaintiff failed to adequately plead facts suggesting that Budish and Schilling committed a constitutional violation. *Id*. Defendants also noted that Plaintiff's pleadings are insufficient to support his *Monell* claim under either a "single incident" or "pattern or practice" theory. *Id*.

## II. Legal Standard

After pleadings are closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard. *See Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). Under that standard, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d

327, 336 (6th Cir. 2007).

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In ruling on a Rule 12(c) motion, the Court considers all available pleadings. *See* Fed. R. Civ. P. 12(c). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010).

### III. Claim Eight

In Plaintiff's amended complaint, claim eight brings an action for damages against Defendants Budish and Schilling under 42 U.S.C. § 1983. (ECF No. 20). Defendants argue that the Court should dismiss claim eight because Plaintiff failed to allege active unconstitutional acts by either Budish or Schilling. (ECF No. 27, PageID 335). Defendants also noted that the individualized allegations against Budish and Schilling do not rise to the level of deliberate indifference. *Id*. at 337. Additionally, the Cuyahoga County Charter was amended effective December 26, 2019 to restore autonomy to the County Sheriff and remove the County Executive's prior unilateral authority to appoint or remove the Sheriff. *Id*. at 339. Consequently, Defendants argue that Budish lacked supervisory authority over the deputy sheriffs involved in the incident, Lourie and Rodriguez. *Id*.

Plaintiff argues that Defendants ignored numerous allegations that support individual liability against Budish and Schilling including, paragraphs 207–210, 214–220, 241–244, 290–293, and 301–309. (ECF No. 35, PageID 387). Plaintiff stated that the 2019 Charter Amendments are irrelevant because they were not in effect at the time of the eighteen excessive force incidents described in the complaint and Budish can still be individually liable even if he was not responsible for the day-to-day supervision of the County's law enforcement officers. (ECF No. 35, PageID 390).

Defendants responded that Plaintiff's complaint contains allegations related to Schilling and Budish failing to act to correct problems in the jail, however, it lacks any wrongful affirmative act by Budish or Schilling that relates to what happened to Plaintiff. (ECF No. 37). They argued that the Charter amendments make Lourie and Rodriguez non-subordinates of Budish and there is no case law that supports supervisory liability attaching to wrongful conduct by a non-subordinate. *Id*.

Upon review of the amended complaint, paragraphs 207–210 contain one vague allegation that "County administration" failed to respond appropriately to acts of gratuitous and excessive violence. (ECF No. 20). The remaining allegations reference just "the County." *Id*. Paragraph 214 alleges that Budish and Schilling "failed to have adequate policies and procedures to ensure the protestors' constitutional rights were not violated, for failure to train and supervise, and for other particular reasons as alleged in this Amended Complaint." *Id*. Paragraph 220 alleges that the constitutional violations committed by the Sheriff's Department on May 30, 2020 were caused by a lack of policy regarding "how to approach crowd control so as to not exacerbate matters." *Id*. Plaintiff then cited to a policy that the Cleveland Division of Police has regarding civil disturbances as an example of a policy that should exist at the County level. *Id*. However, the amended

4

complaint fails to address what County policies regarding civil disturbances, if any, are at issue in this case. In paragraphs 244–246, Plaintiff provides language from the alleged Cuyahoga County Sheriff Department's policy concerning the use of "Impact Weapons and Less Lethal Shotgun Munitions." *Id*. Plaintiff then highlights how Defendant Lourie violated the policy. *Id*. Defendant Lourie's potential violation of alleged county policy does not establish any liability for Defendants Budish or Schilling. *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

Contained within the allegations that Plaintiff enumerated under claim eight is one allegation that Defendants Budish and Schilling "knew about the problems in the Cuyahoga County Sheriff's Department and failed to take appropriate steps to ensure that citizens' constitutional rights were not violated." *Id*. Under a theory of supervisory liability, the law requires more than "an attenuated connection between the injury and the supervisor's alleged wrongful conduct." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). Mere failure to act does not suffice to establish supervisory liability. *Id*. (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). "[S]upervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Id*. (citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). At a minimum, Plaintiff must show that Defendants Budish and Schilling "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. at 242. The Plaintiff has failed to allege sufficient factual matter to allege that Budish implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct of the deputy sheriffs on May 30, 2020. Nowhere in the amended complaint does the Plaintiff state what actions Budish took that would have implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct.

However, in Deputy Lourie's report attached to Plaintiff's opposition, Deputy Lourie

wrote, "I ran into the Sheriff at the first floor and asked him if it was ok to get the less than lethal. He said OK. I retrieved the less than lethal shotgun from the weapons safe in the rollcall room." (ECF No. 35, PageID 400). Even though this report was not attached to Plaintiff's amended complaint, the Court can still consider it as part of the pleadings because its contents were referenced in the amended complaint. *See Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010). Paragraph 246 of Plaintiff's amended complaint states, "Deputy Lourie and other deputies derisively referred to the entire crowd as 'rioters' when only a small number were involved in vandalism or other conduct that could cause them to be deemed rioters." (ECF No. 20). Deputy Lourie's report frequently references the protestors as "rioters" or "violent rioters" and there is no reference elsewhere in the amended complaint as to where Plaintiff obtained the information that Deputy Lourie referred to the crowd as rioters, so the Court concludes that Plaintiff was referencing Deputy Lourie's report. (ECF No. 35, PageID 400–03).

The evidence cited in Deputy Lourie's report that Sheriff Schilling gave him permission to obtain the less lethal shotgun, despite Deputy Lourie not being certified to do so, makes it plausible that Sheriff Schilling implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. This is buttressed by the fact that Sheriff Schilling's "After Action Report" acknowledges that several deputies who were not trained in the use of less than lethal weapons possessed and deployed them during the encounter with protesters on May 30, 2020. (ECF No. 20).

Consequently, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to Defendant Budish in claim eight and dismisses Defendant Budish with prejudice. However, the Court **DENIES** Defendants' motion for judgment on the pleadings with respect to

6

Defendant Schilling in claim eight.

### a. Qualified Immunity

Defendants also asserted that Budish and Schilling are entitled to qualified immunity because Plaintiff failed to adequately allege that Budish and/or Schilling violated his constitutional rights or that those rights were "clearly established" at the time. (ECF No. 27, PageID 343).

Plaintiff argued that grants of qualified immunity at the pleadings stage are disfavored because of the fact-intensive nature of the qualified immunity inquiry. (ECF No. 35, PageID 393). He then emphasized that even if it were an appropriate determination at this stage, "there is little question that Sanders asserts rights that were clearly established at the time of his injury." (ECF No. 35, PageID 394).

Defendants responded that the Sixth Circuit recently emphasized that there is no presumption against deciding qualified immunity via a motion to dismiss. (ECF No. 37) (*citing Crawford v. Tilley*, 15 F.4th 752, 765–66 (6th Cir. 2021)). Defendants argued that Budish and Schilling are entitled to qualified immunity under both prongs of the qualified immunity defense because Plaintiff fails to cite to any prior cases from any court that support essential elements of his supervisory liability claim. (ECF No. 37).

Defendants are not entitled to qualified immunity at the pleadings stage if (1) "the facts alleged make out a violation of a constitutional right" and (2) that right "was clearly established when the event occurred so that a reasonable offic[ial] would have known that his conduct violated it." *Crawford v. Tilley*, 15 F.4th 752, 762–63 (6th Cir. 2021). Plaintiff is correct that analyzing the second prong of qualified immunity just based on the pleadings may be difficult because the inquiry could turn on details fleshed out in discovery. *See Myers v. City of Centerville, Ohio*, 41 F.4th 746, 758 (6th Cir. 2022). However, that does not prevent the Court from analyzing

the first prong of qualified immunity, whether the complaint plausibly alleged a constitutional violation. *Id*. at 759. "[I]f the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings." *Id*. As noted above, Plaintiff failed to adequately plead a constitutional violation by Budish. Thus, Budish is entitled to qualified immunity. However, as it is plausible that Schilling committed a constitutional violation, the Court cannot grant Defendant Schilling qualified immunity at this stage without fleshing out further factual details in discovery.

### IV. Claim Nine

In Plaintiff's amended complaint, claim nine alleges damages for criminal acts under O.R.C. § 2307.60(A)(1). (ECF No. 20). It alleges that Budish and Schilling violated O.R.C. § 2921.45(A). *Id*. O.R.C. § 2921.45(A) states, "[n]o public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right." Defendants argue that Plaintiff failed to sufficiently allege that Budish or Schilling deprived him of any constitutional right, or that they did so "knowingly." (ECF No. 27).

Plaintiff responded that he more than adequately alleged facts supporting his First and Fourth Amendment claims. (ECF No. 35, PageID 395). However, the Court notes that Plaintiff failed to address the "knowingly" requirement of O.R.C. § 2921.45(A). *Id*.

Plaintiff's amended complaint vaguely asserts that Budish and Schilling knew about "the problems" in the Sheriff's Department and "failed to take appropriate steps to ensure that citizens' constitutional rights were not violated." (ECF No. 20). As noted in the analysis of the pleadings related to claim eight, Plaintiff failed to adequately plead a constitutional violation by Budish. Consequently, Plaintiff certainly failed to plead that Budish "knowingly deprive[d], or conspire[d]

8

or attempt[ed] to deprive any person of a constitutional or statutory right." Plaintiff also failed to address how any alleged violation by Schilling meets the "knowingly" requirement of O.R.C. § 2921.45(A). The pleadings do not sufficiently support a plausible claim that Schilling knowingly deprived, or conspired or attempted to deprive Plaintiff of a constitutional or statutory right. Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to claim nine and dismisses claim nine with prejudice.

### V. Claims Ten and Eleven

In Plaintiff's amended complaint, claim ten alleges liability under 42 U.S.C. § 1983 against Cuyahoga County, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for deliberate indifference in failing to train and supervise its deputy sheriffs. (ECF No. 20). Claim eleven alleges liability under 42 U.S.C. § 1983 against Cuyahoga County, pursuant to *Monell*, for a custom, policy, pattern, and/or practice tolerating First Amendment retaliation and the use of excessive force. *Id*. Defendants argue that Plaintiff failed to properly plead a "pattern and practice" because Plaintiff relied on eighteen incidents involving the jail and no incidents involving law enforcement use of force in a public setting, incidents involving use of beanbag rounds, or incidents involving deputy sheriffs violating the First Amendment right to peaceably assemble. (ECF No. 27, PageID 332). Consequently, Defendants ask the Court to find that Plaintiff has merely alleged a pattern of generic "use of force" violations occurring in the Jail that are factually and legally distinct from the alleged violations against Plaintiff. (ECF No. 27, PageID 333).

Defendants also argue that Plaintiff's failure to train argument fails because he did not allege that the County provided no training concerning the use of beanbag rounds, rather the Plaintiff alleged that Deputy Sheriff Lourie was not adequately trained to use beanbag rounds. (ECF No. 27, PageID 334). The Defendants cite to *Stewart v. Warren County Board of*

9

*Commissioners*, 821 F. App'x 564 (6th Cir. 2020) for the proposition that the unsatisfactory training of one employee cannot amount to "deliberate indifference." *Id*.

Plaintiff responded that the eighteen jail incidents cited in his amended complaint put Defendants on notice of "the frequency and likelihood of constitutional deprivations." (ECF No. 35, PageID 375). Plaintiff argued that the eighteen incidents "are enough to draw the reasonable inference that the use of excessive force permeates the entire culture of the Sheriff's office." *Id*. at 376. Plaintiff alleged that the amended complaint did not just target Defendant Lourie's lack of training and cited to paragraphs 311–318 as evidence that he alleged that deputy sheriffs in general were inadequately trained. *Id*. at 382.

Defendants replied that courts routinely dismiss *Monell* claims at the pleading stage for failure to allege a pattern of similar prior incidents. (ECF No. 37). Defendants also noted that Plaintiff offered no support for his argument that the Court should consider the "root cause" in determining the similarity of prior incidents and the fact that the alleged prior incidents all took place in a jail setting is irrelevant to similarity. *Id*.

The parties agree that for a municipality to be liable for the actions of its officers under § 1983, Plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). Plaintiff can prove the existence of a municipality's policy or custom in four ways: "1) the municipality's legislative enactments or official agency policies; 2) actions taken by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Both parties agree that Plaintiff's complaint focuses on inadequate training or

supervision, and tolerance of or acquiescence to federal rights violations.

In order to adequately plead a tolerance or acquiescence theory, Plaintiff must allege "1) 'a clear and persistent' pattern of unconstitutional conduct by municipal employees; 2) the municipality's 'notice or constructive notice' of the unconstitutional conduct; 3) the municipality's 'tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction;' and 4) that the policy of inaction was the 'moving force" of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee." *D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014) (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).  A failure to train theory also requires "[a] pattern of similar constitutional violations by untrained employees" in order to demonstrate "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011).

a. **Pattern of Similar Incidents**

In the amended complaint, Plaintiff provides details concerning prior incidents of alleged excessive force involving Cuyahoga County Sheriff's Office employees. (ECF No. 20).  The first alleged incident involved a Corporal during the booking process at the Euclid Jail. *Id*.  The second incident does not include a location, but references an incident with an inmate, a correctional officer, and a Corporal, so the Court concludes it occurred in a detained environment. *Id*. The third incident occurred in the county jail and involved numerous correctional officers and a Corporal. *Id*. The fourth incident involved a "Cuyahoga County Sheriff employee" during booking at the county jail.  *Id*. The fifth incident also occurred during booking at the county jail and merely references "Cuyahoga County Sheriff employees." *Id*.  The sixth incident also occurred during

11

booking at the county jail, involved the same employee referenced in the fourth incident and a Corporal. *Id*. The seventh incident occurred in the county jail and involved a "Cuyahoga County Sheriff employee." *Id*. The eighth incident occurred in the county jail and involved "Cuyahoga County Sheriff employees" and at least two Corporals. *Id*. The ninth incident occurred during booking at the county jail and involved "Cuyahoga County Sheriff employees." *Id*. The tenth incident references a jail and involves a "Cuyahoga County Sheriff employee." *Id*. The eleventh incident occurred at the county jail and involved a "Cuyahoga County Sheriff employee." *Id*. The twelfth incident does not specify a location, but the complaint refers to the individuals involved being an "inmate" and officers, so the Court concludes it was in a detained setting. *Id*. The thirteenth incident occurred in the county jail and involved "Cuyahoga County Sheriff's Office employees." *Id*. The fourteenth incident does not specify a location, but identifies the individuals involved as "Cuyahoga County Sheriff's Office employees." *Id*. The fifteenth incident occurred in the county jail and involved "Cuyahoga County Sheriff's Office employees" and a Corporal. *Id*. The sixteenth incident occurred in a "small cell" and involved a Corporal and another employee. *Id*. The seventeenth incident occurred in a detained setting and involved numerous correctional officers and a Corporal. *Id*. The eighteenth incident occurred at the Cuyahoga County jail and involved a "Cuyahoga County Sheriff's Office employee." *Id*. None of the incidents involved deputy sheriffs and all of them took place in a detention setting. None involved the use of beanbag rounds, the main alleged exercise of excessive force at issue in this case.

"[O]nly similar incidents of prior misconduct can put a municipal actor on notice that comparable misconduct may occur in the future." *D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014). Cuyahoga County "cannot have tacitly approved an unconstitutional policy of which it was unaware." *Id*. Plaintiff admitted that the constitutional rights at issue in excessive force

12

incidents involving free citizens, inmates, and pretrial detainees are different. (ECF No. 35, PageID 377). *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537–38 (6th Cir. 2015) provides a short summary of the case law concerning the separate standards that are applied in each situation to determine if a government actor used excessive force against a free citizen, an inmate, or a pretrial detainee. Each of the incidents cited by Plaintiff as evidence of a custom, policy, pattern, and/or practice of excessive force within the Cuyahoga County Sheriff's Department are factually and legally distinct from this case. Consequently, the eighteen incidents cited by Plaintiff do not establish "a clear and persistent" pattern of unconstitutional conduct by deputy sheriffs or a pattern of similar constitutional violations by untrained employees.

Accordingly, the Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to claim eleven and dismisses claim eleven with prejudice.

### b. Failure to Train

A municipality may still be liable under a failure to train theory for a single violation of federal rights where the "violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Shadrick v. Hopkins County, Ky.*, 805 F.3d 724, 739 (6th Cir. 2015). Plaintiff cited to paragraphs 311–318 as evidence in support of the single violation theory. (ECF No. 35, PageID 382). In paragraph 312, Plaintiff states that the Cuyahoga County Sheriff's Department written policy requires that "[d]eputies will be trained and certified in the use of approved impact weapons and must maintain certification." (ECF No. 20). Paragraph 314 asserts, "Defendant Cuyahoga County failed to train and supervise its officers on how to use the best tactics, including the best use of force procedures when required." *Id*. Paragraph 237 of the amended complaint highlights Sheriff Schilling's October 5, 2020 "After Action Report" that stated that three deputies deployed less lethal munitions on May 30, 2020 that

did not have the necessary certification to operate the munitions they deployed. *Id*. Paragraph 237 goes on to highlight that the County has since instituted a new policy where, "when the potential for less lethal deployment arises, supervisors assigned to SWAT and MFF [Mobile Field Force] will assign less lethal munitions directly to certified deputies under their command." *Id*. Notably, this new policy is in stark contrast to the actions taken on May 30, 2020, when the Sheriff allegedly granted Deputy Lourie permission to use the less than lethal weapon without inquiring as to Deputy Lourie's certification status. (ECF No. 35, PageID 400).

The Court acknowledges that the potentially inadequate training that Defendant Lourie received is not enough to demonstrate deliberate indifference on the part of Cuyahoga County. *See Stewart v. Warren County Board of Commissioners*, 821 F.App'x 564, 574 ("inadequate training of one employee is not enough to demonstrate deliberate indifference"). However, Defendant Lourie was not the only deputy that deployed less lethal munitions on May 30, 2020 that lacked the necessary certification to do so. (ECF No. 20). Defendant Lourie has been employed as a Deputy Sheriff since December 2001. *Id*. The County does not adequately equip its deputies with the required training and certification concerning less lethal munitions if Deputy Lourie was not certified to be handling a less lethal shotgun nineteen years into the job. This failure seems to be pervasive. As previously stated, Sheriff Schilling's "After Action Report" acknowledged that several deputies possessed and deployed less than lethal munitions without the appropriate certification. (ECF No. 20). The failure to train/certify numerous deputies, that we know of, in the use of less lethal munitions leads to the highly predictable consequence of a federal rights violation when deputies are recurrently in situations that present a need to use less than lethal force. Consequently, it is plausible that Cuyahoga County is liable under a failure to train theory for a single violation of federal rights.

Accordingly, the Court **DENIES** the Defendants' motion for judgment on the pleadings with respect to claim ten.

### VI. Claim Twelve

In Plaintiff's amended complaint, claim twelve alleges that Cuyahoga County is liable for reckless and/or negligent hiring, training, supervision, discipline, staffing, and retention of Defendants Lourie and Rodriguez. (ECF No. 20). Defendants argue that the County is protected from tort liability in this instance under the immunities and defenses provided in the Political Subdivision Tort Liability Act, O.R.C. § 2744.02. (ECF No. 27, PageID 334). Plaintiff did not respond in opposition to the motion for judgment on the pleadings for this specific claim, so Defendants argue that Plaintiff has effectively abandoned the claim. (ECF No. 37).

A plaintiff abandons undefended claims. *PNC Bank, Nat. Ass'n v. Goyette Mechanical Co., Inc.*, 88 F.Supp.3d 775, 785 (E.D. Mich. 2015). When a party fails to respond to an argument in a motion to dismiss, the Court assumes that the party conceded that point and abandoned the claim. *ARJN #3 v. Cooper*, 517 F.Supp.3d. 732, 750 (M.D. Tenn. 2021). Nonetheless, analysis of the merits of the claim leads to the same result: dismissal.

With a few exceptions, O.R.C. § 2744.02(A)(1) dictates that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." A county falls within the definition of "political subdivision." O.R.C. § 2744.01(F). "The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection" are governmental functions. O.R.C. § 2744.01(C)(2)(a). "[N]egligence (or reckless, wanton, or willful conduct) in hiring, training, and supervising does not fall within the plain language of any of the exceptions

15

established by R.C. 2744.01(B)(1) through (5)." *McConnell v. Dudley*, 144 N.E. 3d 369, 377 (Ohio 2019).  Thus, the "reckless, wanton, willful and/or negligent conduct" that Cuyahoga County allegedly engaged in when "hiring, training, supervising, disciplining, staffing, and retaining Defendants Lourie and Rodriguez" does not fall into any of the exceptions carved out of Ohio's Political Subdivision Tort Liability Act.

Accordingly, Cuyahoga County is protected under O.R.C. § 2744.02 from the liability alleged in claim twelve.  The Court **GRANTS** Defendants' motion for judgment on the pleadings with respect to claim twelve and dismisses claim twelve with prejudice.

The Court **GRANTS** Defendants' motion for judgment on the pleadings (ECF No. 27) with respect to Defendant Budish in claim eight, all relevant defendants in claim nine, claim eleven, and claim twelve and dismisses those claims with prejudice.  The Court **DENIES** Defendants' motion for judgment on the pleadings with respect to Defendant Schilling in claim eight and Cuyahoga County in claim ten.

**IT IS SO ORDERED**.

Dated:  December 20, 2022

                                                 **HONORABLE CHARLES E. FLEMING**
                                                 **UNITED STATES DISTRICT JUDGE**